UNITED STATES of America,
Appellee,

v.

José VELEZ, Defendant–Appellant.

Docket No. 02–1766.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 13, 2003.

Decided: Jan. 13, 2004.

Robert L. Moore, Hempstead, NY, for Defendant–Appellant.

Victor L. Hou, Assistant United States Attorney (Adam B. Siegel, Assistant United States Attorney, of counsel, and James B. Comey, United States Attorney for the Southern District of New York, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Before: WALKER, LEVAL, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

José Velez appeals from a judgment of conviction and sentence entered against him in the United States District Court for the Southern District of New York (Rich-

ard Conway Casey, *Judge* ) for one count of possession of a firearm transported in interstate commerce, after a felony conviction, pursuant to 18 U.S.C. § 922(g)(1). On appeal, defendant contends that (1) the District Court erred in implicitly finding enforceable a provision of a proffer agreement permitting use of his proffer statements in certain circumstances at trial, and (2) the District Court erred in declining to replace trial counsel after counsel participated in a proffer session in which defendant made partial admissions of guilt.

We affirm.

## BACKGROUND

On November 21, 2001, defendant was indicted for being a convicted felon in possession of a firearm shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).[1] The charge was based on the observations of three New York Police Department officers—namely, that on August 18, 2001 the officers saw defendant pull a gun from his waistband, heard the sound of metal hitting pavement, and then recovered a gun from the ground where defendant had been standing.

Shortly after being charged, defendant participated in two proffer sessions. In a first session on January 14, 2002, defendant, accompanied by counsel, asserted his innocence, claiming that he did not possess the gun found on the ground where he had been standing. The Government did not credit defendant's statements.

On May 9, 2002, defendant, again accompanied by counsel, participated in a second proffer session, which he had requested. (At this session, defendant was represent-

---

**1.** 18 U.S.C. § 922(g) provides in relevant part:

It shall be unlawful for any person-
(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; ...

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

ed by his second attorney, because the District Court had granted defendant's request that he be relieved of his prior counsel.) Before participating in the meeting, defendant signed an agreement in which he waived, in certain circumstances, the protection otherwise applicable to his proffer statements that prohibits use of those statements as evidence against him. Relevant to this appeal, the waiver provision to which defendant agreed provides:

> [T]he Government may ... use statements made by [defendant] at the meeting to rebut any evidence or arguments offered by or on behalf of [defendant] (including arguments made or issues raised *sua sponte* by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against [defendant].

Accordingly, by signing the proffer agreement that included this waiver provision, defendant authorized the Government to introduce defendant's proffer statements at trial if defendant introduced evidence or arguments that were inconsistent with his proffer statements.

In the second proffer session, defendant recanted his claims of innocence at the initial session and admitted facts pertaining to one element of the charged offense—namely, that he owned and possessed the firearm that the officers found on the ground near him.

Defendant thereafter requested a third proffer session, which the Government scheduled, but defendant canceled the meeting and elected to proceed to trial.

Before the start of trial, however, defendant presented two issues to the District Court. First, he requested that the Court again appoint new defense counsel, on the ground that he would not receive a fair trial because his current (second) counsel had stated that he was "limited to at-tack[ing] certain areas," which, as defendant contended, was due to counsel's presence at the proffer session. The District Court denied defendant's request.

Second, through his attorney at a pretrial conference and in an *in limine* motion, defendant sought a preliminary ruling from the District Court on the scope of the defense's arguments and defense witness testimony that would open the door to the Government's use of defendant's proffer statements. In response to defendant's argument at the pretrial conference, the Government informed the Court that it did not seek to introduce defendant's proffer statements in its case-in-chief, but that it reserved the right "to introduce such statements if they are deemed necessary to rebut testimony or arguments made by or on behalf of the defendant that are inconsistent with statements made by the defendant during the proffer session."

The District Court initially did not rule on defendant's motion, but it noted that certain anticipated defense witness testimony would "come 'close' to opening the door to [the Government's] introduction of [defendant's] proffer statements." (Appellee's Br. at 10 (quoting trial transcript at 36).) When defense counsel informed the Court that it would not elicit that testimony, the District Court provided additional time for the defense to reconsider its decision. However, later in the day, the District Court stated that if the anticipated defense witness testimony were introduced, the Court would indeed permit the Government to introduce defendant's proffer admissions, thereby implicitly finding that the proffer agreement was enforceable. Defendant did not introduce the anticipated testimony.

After a three-day trial, the jury convicted defendant of the sole count of the indictment, which yielded a sentencing range

of 100 to 125 months' imprisonment under applicable guidelines. At sentencing, in the context of offering mitigation to warrant a sentence at the low end of the range, defendant stated that he had been "trap[ped]" into making his admissions at the second proffer session.[2] The District Court declined to credit defendant's statement as relevant to mitigation, and on December 16, 2002, sentenced defendant principally to 120 months' imprisonment.

## DISCUSSION

### 1. Challenge to the Waiver Provision in the Proffer Agreement

On appeal, defendant argues that the waiver provision in the proffer agreement—which permits the Government to offer a proffer admission by the defendant in rebuttal to contradictory evidence or argument—violates defendant's constitutional rights to mount a defense, to the effective assistance of counsel, and to a fair trial.[3] We disagree.

■ As an initial matter, we reject the Government's assertion that we must refuse to consider defendant's challenge on the ground that the record is insufficient for review because defendant failed to trigger the waiver provision at trial, either through evidence or argument. For this position, the Government relies on *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), in which the Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." The Government reads *Luce* as setting forth a bright-line rule that, when applied to waiver provisions in proffer agreements, requires a defendant to "actually trigger" the contested waiver provision by "introducing all of the arguments and evidence he wished to present, and letting the Government respond with the rebutting confession." (Appellee's Br. at 19.)

In *Luce,* the defendant appealed the district court's *in limine* ruling that the Government could use a particular item of evidence (a record of a prior conviction for possession of a controlled substance) to impeach the defendant's credibility in the event that he testified and denied any prior involvement with drugs. *See Luce,* 469 U.S. at 39–40, 105 S.Ct. 460. Reasoning that, under the evidentiary rule governing permissible impeachment evidence, review of the trial court's ruling depended on a fact-specific balancing of the prior conviction's probative value and its prejudicial effect, which, in turn, depended on the exact nature of the defendant's actual testimony triggering use of the contested impeachment evidence, the Supreme Court concluded that appellate review was unavailable in the absence of testimony by the defendant. *Id.* at 41, 105 S.Ct. 460.

This conclusion does not support the Government's assertion here that we are precluded from reviewing defendant's

---

2. Defendant's exact statement was the following:

> I signed a proffer statement which says I was innocent the first time I went there, and I explained the story to them, and it was innocent. And the second time, it became a totally different story because they offer you something that I want to go home, I want to be with my family, and they trap me into saying something which cut the ring short at my trial.

3. Relying on defendant's pretrial assertion that he "[was] not going to have a fair trial," which occurred in the context of his attorney's oral *in limine* motion concerning the potential limitations placed on defense counsel by the waiver provision, we treat the claim on appeal as adequately raised below and therefore reviewable for harmless, rather than plain, error. *See* Fed.R.Crim.P. 52.

claim. Unlike the claim in *Luce*, defendant in the instant case contends that the waiver provision is unenforceable and unconstitutional as a general matter, not that the trial court erred in its application of an evidentiary rule's balancing test. He states: "It seems enough that the Government is able to effectively prevent the defendant from testifying in his own behalf," referring to the Supreme Court's enforcement in *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), of a proffer agreement in which the defendant permitted the Government to introduce his proffer statements in response to his own contrary testimony at trial. (Appellant's Br. at 15.) Defendant continues: "[T]his Court should not extend the *Mezzanatto* rule beyond the

defendant's testimonial evidence thus to include any evidence proffered that the defendant is innocent." (*Id.*) The record and its fact-specific contents are irrelevant to the consideration of defendant's broad assertion that proffer agreements cannot constitutionally contain provisions that waive a defendant's exclusionary privileges with regard to evidence or argument beyond his own testimony. Accordingly, we proceed to consider the claim.[4]

■ Ordinarily, statements made by a defendant during plea negotiations, including proffer sessions, are inadmissible at trial. Fed.R.Evid. 410; *see also* Fed. R.Crim.P. 11(f) (referring to Federal Rule of Evidence 410).[5] However, a defendant

---

**4.** Even if defendant were challenging the District Court's *in limine* ruling that his proffer statements would be admissible in response to certain of the anticipated defense evidence and argument, we would still not read *Luce* as dictating that we refuse to hear the claim. That is because the District Court's ruling in the instant case does not depend on the fact-specific balancing of prejudicial effect and probative value that was influential to the *Luce* Court. *See Luce*, 469 U.S. at 41, 105 S.Ct. 460; *United States v. Weichert*, 783 F.2d 23, 25 (2d Cir.1986) (applying *Luce* to *in limine* rulings that permit impeachment evidence under Federal Rule of Evidence 608(b) because "the trial court still is required to balance probative value against prejudice under Fed.R.Evid. 403, and this balancing is as dependent on the specific factual context as it is in Rule 609 cases" governed by *Luce* ); *see also Luce*, 469 U.S. at 44, 105 S.Ct. 460 (Brennan, J., concurring) ("I do not understand the Court to be deciding broader questions of appealability *vel non* of *in limine* rulings that do not involve Rule 609(a)."). Nevertheless, other reasons, such as the extent to which the ruling is contextually bound, may ultimately persuade us that appellate review is unavailable to such challenges. *See Rosenfeld v. Basquiat*, 78 F.3d 84, 91 (2d Cir.1996) (permitting appeal of an *in limine* motion ruling on the admissibility of testimony under a state Dead Man's Statute, without requiring a renewed objection at trial, because, "[u]nlike rulings that involve balancing

potential prejudice against probative value, the ruling in the present case was not fact-bound" and because the issue was essentially legal, it was fairly presented to the trial court, and the ruling was explicit and definitive). Because we are not squarely presented with such a challenge in the instant case, we reserve judgment on any such issue at this time.

**5.** Federal Rule of Evidence 410 provides in relevant part:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

(2) a plea of nolo contendere;

(3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or

(4) *any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.*

(Emphasis added.)

Federal Rule of Criminal Procedure 11(f) provides: "The admissibility or inadmissibility of a plea, a plea discussion, and any related

can waive the protection afforded by Rule 410 as long as there is no "affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily." *Mezzanatto*, 513 U.S. at 210, 115 S.Ct. 797. In *Mezzanatto*, as defendant correctly points out, the Supreme Court considered and enforced a narrow waiver provision in which the defendant permitted the Government to use his plea-negotiation statements only when responding to contrary testimony by the defendant himself. *Id.* at 198, 115 S.Ct. 797. Here we face a more expansive waiver of Rule 410 because, in the proffer agreement at issue, defendant waived his exclusionary privilege in all circumstances in which the defense presents contradictory testimony, evidence, or arguments—whether or not defendant himself testifies. We agree with the District Court's implicit decision that the agreement is enforceable.

In contending that the agreement is unenforceable, defendant relies principally on *United States v. Duffy*, 133 F.Supp.2d 213 (E.D.N.Y.2001), in which the district court refused to enforce a waiver provision in a proffer agreement similar to the one we consider here. The *Duffy* ruling determined that the waiver provision "prevent[ed defense counsel] from making any sort of *meaningful* defense," *id.* at 216, and that it "exploit[ed]" a disparity of bargaining power between the Government and the defendant, *id.* at 217. The court stated: "After signing the standard proffer agreement, the terms of which are dictated by the government, the only thing that a defendant is guaranteed is the chance to convince the prosecutor to enter a deal. At the same time, the defendant bears all of the risk." *Id.* Concluding that the waiver provision effectively forfeited the defendant's fundamental rights to present a de-

fense and to the effective assistance of counsel and, in doing so, implicated important public interests, the district court held the waiver provision unenforceable. *Id.* at 218.

For the reasons that follow, we respectfully decline to adopt the position advanced in *Duffy*, and we note with approval the recent, contrasting opinion in *United States v. Gomez*, 210 F.Supp.2d 465 (S.D.N.Y.2002), which found enforceable a proffer agreement containing a waiver provision identical to the one at issue in this case.

As the *Gomez* ruling points out, "fairness dictates that the agreement be enforced." *Id.* at 475. "If the proffer agreement is not enforced, a defendant will have less incentive to be truthful, for he will know that his proffer statements cannot be used against him at trial as long as he does not testify, even if he presents inconsistent evidence or arguments." *Id.; see also United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir.1998) (stating that, in proffer sessions, "a prosecutor needs assurance that the defendant is being candid" and that "[f]or this strategy to work the conditional waiver must be enforceable; its effect depends on making deceit *costly* ").

In addition, invalidating a waiver provision like the one before us would clearly interfere with plea bargaining and cooperation efforts—in direct contravention of the criminal justice system's legitimate goal of encouraging plea bargaining in appropriate circumstances. *See Mezzanatto*, 513 U.S. at 207, 115 S.Ct. 797. The Supreme Court has noted that, "[i]f prosecutors were precluded from securing [waiver] agreements, they might well decline to enter into cooperation discussions in the first place and might never take this potential first step toward a plea bargain."

statement is governed by Federal Rule of Evidence 410."

*Id.* at 207–08, 115 S.Ct. 797; *see also Gomez,* 210 F.Supp.2d at 475 ("Prosecutors will be reluctant to enter into cooperation agreements if they cannot obtain some assurance that the defendant will tell the truth.").

We do not lightly dismiss the observation in *Duffy* that the Government holds significant bargaining power in arranging proffer sessions and securing a waiver provision as a prerequisite for a defendant's participation. 133 F.Supp.2d at 217–18. However, "[t]he mere potential for abuse of prosecutorial bargaining power is an insufficient basis for foreclosing negotiation altogether." *Mezzanatto,* 513 U.S. at 210, 115 S.Ct. 797; *id.* at 209–10, 115 S.Ct. 797 (rejecting the argument that " 'gross disparity' in the relative bargaining power" renders waiver of Rule 410 in plea negotiations so "inherently unfair and coercive" that waiver should be prohibited). Indeed, to the extent there is a disparity between the parties' bargaining positions, it is likely attributable to the Government's evidence of the defendant's guilt. *See Gomez,* 210 F.Supp.2d at 475 ("[A]lthough the Government does have significant bargaining power in these situations, it is because the Government has substantial evidence to prove the defendant's guilt."). We thus reject the argument that defendant, relying on *Duffy,* makes in this case—that the asserted disparity of power between the Government and a defendant in proffers renders waiver provisions in proffer agreements unenforceable.

Finally, a defendant remains free to present evidence inconsistent with his proffer statements, with the fair consequence that, if he does, "the Government [is] then . . . permitted to present the defendant's own words in rebuttal." *Gomez,* 210 F.Supp.2d. at 476. With this avenue open to him, a defendant who has consented to a waiver provision like the one at

issue here has not forfeited his constitutional right to present a defense, to the effective assistance of his counsel, or to a fair trial.

Accordingly, we reject defendant's claim that the waiver provision is unconstitutional, and we hold that, where a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not defendant testifies, is enforceable.

Having concluded that the waiver provision in this proffer agreement is enforceable as long as it was entered into knowingly and voluntarily, we review the facts in that regard.

■ As noted above, before the waiver can be deemed unenforceable, the trial judge must find "some affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily." *Mezzanatto,* 513 U.S. at 210, 115 S.Ct. 797. A waiver is made knowingly if the defendant has "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and it is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (defining these terms in the context of waiver of *Miranda* rights).

Defendant does not contend that he failed to understand the right being waived or the consequences of the waiver. Instead, he claims, as he did at sentencing, that, when he participated in the second proffer session, he changed his story because the prosecution "trap[ped]" him into

making admissions. Defendant contends that this statement—by him, at a sentencing hearing held four months after the end of the trial, *see* note 2, *ante*—is evidence of coercion at the proffer session.

We find no merit in defendant's claim of coercion. Defendant's explanation of his participation in the second proffer session fails to demonstrate that his consent to the terms of the proffer agreement was a product of coercion, rather than a normal consequence of his decision to participate in the proffer session—which defendant himself had requested.

In sum, we hold that the District Court did not err in implicitly finding enforceable the waiver provision in the proffer agreement.

## 2. Claim of Ineffective Assistance of Counsel

■ Defendant, represented on appeal by still another attorney (his third), also asserts that trial counsel's continued representation of him following the attorney's presence at the second proffer session, in which defendant made partial admissions of guilt, constitutes a conflict of interest between defendant and attorney that deprived defendant of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Defendant essentially argues that his attorney's continued representation created a potential conflict of interest by placing the attorney under inconsistent duties in the future—namely, that the attorney was a potential witness to the proffer session in the event that defendant claimed that his participation and statements in the session were a product of coercion.

Defendant argues that "this Court [should] announce a new rule for the Circuit and mandate the assignment of new counsel in situations such as confronted the defendant at bar," that is, where the

trial court knows that the defendant, accompanied by counsel, attended a proffer session and made damaging admissions but did not receive a cooperation agreement. (Appellant's Br. at 10.) "At the least," defendant contends, "the rule should be that a post-proffer, pre-trial hearing should be conducted to ascertain the extent of any conflict that appears from a claim of the kind made by the defendant in the case at bar." (*Id.*)

Defendant's contention is meritless. He would have us rule that whenever the district court learns that a defendant has made admissions at a proffer session with his lawyer present, and still faces trial, the court should assume the defendant may at some time in the future contend that he was coerced and will need the testimony of his lawyer to prove the coercion, which will be unavailable unless the lawyer is relieved of the representation.

We see no reason why a trial court should assume that a conflict arose from a proffer session. Every time a communication occurs between a defendant and counsel, the possibility exists that the communication gives rise to some conflict or potential conflict. There is nothing about a proffer session that makes it particularly likely that such a conflict will arise. Defendant presents no basis for devising a rules that requires the trial court to hold a hearing, much less *replace* counsel, merely because one can imagine unlikely events that may give rise to a conflict.

We have previously ruled that "an initial inquiry is required when 'the trial court knows or reasonably should know that a particular conflict exists.'" *United States v. Blount*, 291 F.3d 201, 211 (2d Cir.2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)); *see also United States v. Kliti*, 156 F.3d

150, 153 (2d Cir.1998) (holding that the trial court is obliged to inquire when it "knows or reasonably should know of the possibility of a conflict of interest") (citing *United States v. Levy*, 25 F.3d 146, 155 (2d Cir.1994)). In these holdings, we did not suggest that the court was under a duty to inquire whenever, as a result of creative speculation, one could imagine a situation in which a conflict may have arisen. Indeed, in *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), the case upon which *Levy* relied, the Supreme Court imposed a duty of inquiry only because the possibility of a conflict of interest was "sufficiently apparent." *See also Sullivan*, 446 U.S. at 347, 100 S.Ct. 1708 ("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."). The Supreme Court has specifically counseled against requiring inquiry whenever "the trial court is aware of a vague, unspecified possibility of conflict." *Mickens v. Taylor*, 535 U.S. 162, 168–69, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (citing *Sullivan*, 446 U.S. at 346, 100 S.Ct. 1708). Furthermore, our prior rulings require the trial court to conduct a *Curcio* hearing—to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation, *see United States v. Curcio*, 680 F.2d 881, 888–90 (2d Cir.1982)—only if, "through this inquiry, the court determines that the attorney suffers from an actual or potential conflict of interest," *Kliti*, 156 F.3d at 153 (citing *Levy*, 25 F.3d at 153). We see no reason to change the rules in the manner the defendant suggests.

## CONCLUSION

The judgment of conviction of the District Court is affirmed.