**UNITED STATES of America,
Plaintiff,**

v.

**Claudio PARRA and Jorge Gandia
Ortega, Defendants.**

**No. S1 02 CR. 348(PKL).**

United States District Court,
S.D. New York.

Jan. 21, 2004.

David N. Kelley, United States Attorney for the Southern District of New York (Stephen A. Miller, Joon H. Kim, of counsel), New York City, for United States.

Aubrey Lees, New York City, Inga L. Parsons, Marblehead, MA, for Defendant Claudio Parra.

## OPINION AND ORDER

LEISURE, Districct Judge.

Defendants Claudio Parra and Jorge Ortega are charged with conspiracy to distribute or possess with intent to distribute cocaine and with distribution and possession with intent to distribute cocaine. The trial in this matter will begin on January 26, 2004. The government now moves in limine for a ruling that it may introduce statements made by defendant Parra at any of three proffer sessions to impeach Parra or to rebut arguments made on Parra's behalf that contradict Parra's proffer statements. Parra opposes the government's motion on the grounds that he did not knowingly and voluntarily waive certain rights under the Proffer Agreement, and that some or all of the Proffer Agreement violates principles of contract law or constitutional law. The Court has reviewed the thorough briefs of the parties, conducted a hearing, and heard oral argument on the motion. For the reasons set

forth below, the government's motion is granted.

## Background

I. *Factual History*

Parra was arrested on October 17, 2001, and thereafter detained. In an order dated November 6, 2001, Magistrate Judge Ronald Ellis granted Parra release on bail. The agreed bail package conditioned Parra's release upon his posting $15,000 in cash to secure a $250,000 bail bond. Parra posted $15,000 on February 8, 2002, and was released from custody on February 13, 2002. On January 15, 2004, the Court granted the government's application to remand Parra, without bail, following a detention hearing.

Twice before his release on bail and once after, Parra and his attorney at the time, Raymond Colon, Esq., met with attorneys for the United States in proffer sessions. At the outset of each of these proffer sessions, prosecutors presented Parra with a Proffer Agreement. The Proffer Agreement is a form that the government describes as the "standard proffer agreement used by this Office." [1] United States' December 10, 2003, Letter Memorandum, at 2 ("Gov't Brief"). The Proffer Agreement reads, in relevant part: [2]

[T]he following understandings exist:

(1) **THIS IS NOT A COOPERATION AGREEMENT.** The Client has agreed to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions....

(2) In any prosecution brought against Client by this Office, except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting.

(3) Notwithstanding item (2) above: ... (b) in any prosecution brought against Client, the Government may use statements made by Client at the meeting ... for the purpose of cross-examination should Client testify; and (c) the Government may also use statements made by Client (including arguments made or issues raised *sua sponte* by the District Court[3]) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.

. . . . .

(9) Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in

---

1. Proffer agreements are also sometimes called *Mezzanatto* agreements after the Supreme Court case or "Queen for a Day" agreements. *See generally* Richard B. Zabel & James J. Benjamin, Jr., *Are 'Queen's for a Day' Pacts Courtesans?*, N.Y.L.J., June 13, 2001, at 1; Nicholas M. DeFeis & Nathalie Tauchner, *Examining Proffer Agreements in Federal Cases*, N.Y.L.J., Mar. 9, 2001, at 1.

2. A copy of the Proffer Agreement is attached to this Opinion and Order.

3. The government does not ask for a ruling upholding this parenthetic provision of the Proffer Agreement regarding "sua sponte" statements. *See* Gov't Brief, at 1; United States' December 29, 2003, Letter Memorandum, at 6 n. 5 ("Gov't Reply") ("[T]hat provision (relating to the use of proffer statements when the Court *sua sponte* raises an issue) is not at issue here.").

this Agreement and the consequences thereof.

Parra and Mr. Colon signed the Proffer Agreement at the initial session, and initialed the same Agreement at the two subsequent proffer sessions. At the second of the proffer sessions, on January 10, 2002, Parra apparently made several incriminating statements.

Parra claims, among other things, that he did not enter into the Proffer Agreement knowingly and voluntarily. In support of this claim, Parra submits a declaration, in which he asserts that "[the proffer] was never read to me privately with my attorney and it was not explained in any detail by my attorney or the government either before or during the meetings." Declaration of Claudio Parra, ¶ 5 ("Parra Decl."), attached to Defendant Parra's Opposition Letter Brief as Ex. A ("Defendant's Opposition"). Parra continues, "I understood from hearing the document that statements could be used in cross examination if I took the stand at trial or if the government was prosecuting me for perjury. I did not understand the other legal terms of the document. I did not understand that by signing this document my lawyer would be limited in what could be presented at trial. I did not understand that I was giving up trial rights by signing the document." Parra Decl., ¶ 7. Parra declares that the incriminating statements he made during the January 10, 2002, proffer session were not truthful, and that he made those statements because he "wanted the government to let [him] out of jail and felt that [he] had no other choice." Parra Decl., ¶ 10.

Responding to Parra's declaration, the government submits a copy of the bail disposition sheet signed by Magistrate Judge Ellis, declarations from Jason M. Weinstein, Esq., the Assistant United States Attorney present at the proffer sessions, and Karen Smith–Moore, a Detective with the New York City Police Department assigned to the Joint Organized Crime Task Force of the Federal Bureau of Investigation ("FBI"), who was present at the October 25, 2001, proffer session, and the testimony of Mr. Colon, taken at a hearing before this Court on January 15, 2004. Mr. Colon testified that once the government presented Parra with the Proffer Agreement at the first proffer session, he and Parra reviewed the document together without anyone else in the room. Mr. Colon testified that he speaks Spanish fluently, and that Parra speaks Spanish but very little English. Mr. Colon translated the Proffer Agreement verbatim to Parra, and paused to explain critical portions of the Proffer Agreement, in particular paragraphs 3(b) and 3(c), which Mr. Colon described as "onerous." Mr. Colon testified that he used examples to clarify the "onerous" sections of the Agreement, such as that the government can use Parra's statements to rebut arguments Mr. Colon would make at summation. Mr. Colon explained that the government normally could not use proffer statements at trial, but that the Agreement altered this condition. Mr. Colon testified that he was familiar with these provisions, including the language in paragraphs 3(b) and (c) which he "does not favor," from his experience as a criminal defense attorney working in the Southern and Eastern Districts of New York. Parra did not ask questions about the provisions of the Agreement, but asked about the conditions of his bail. Mr. Colon testified that he did not link in any way the proffer session with the status of Parra's release on bail.

After Mr. Colon had explained the terms of the Proffer Agreement, Mr. Weinstein then returned to the room. Mr. Wein-

stein, through an interpreter,[4] also explained the terms of the Proffer Agreement to Parra. Parra and Mr. Colon then signed the Proffer Agreement. At the two subsequent proffer sessions, Mr. Colon reviewed some of the provisions again with Parra, concentrating again on the "onerous" language of paragraph 3. At these sessions, Parra and Mr. Colon initialed the same Agreement.

In addition to the statements of Mr. Colon and Mr. Weinstein, the government draws the Court's attention to the bail disposition sheet signed by Magistrate Judge Ellis, dated November 6, 2001. Because Parra already had been granted bail, the government contends that Parra's declaration that he made statements at the January 10, 2002, proffer session only to get out of jail should be met with skepticism. Parra, although jailed, needed only to post $15,000 to gain release, the government emphasizes.

## II. *The Government's Motion In Limine*

The government now moves in limine for a ruling essentially enforcing the Proffer Agreement. The parties submitted their letter briefs to the Court by December 30, 2003, and the Court scheduled oral argument and a hearing for January 15, 2004. After the parties submitted their papers, and two days before oral argument, the Second Circuit issued its decision in *United States v. Velez*, 354 F.3d 190 (2d Cir. 2004) (Cabranes, J.). In *Velez*, the Second Circuit addresses several of the issues presently before this Court.

Defendant Parra initially opposed the motion on eight stated grounds. Parra argued that: (1) he did not knowingly and voluntarily waive his trial rights under the Proffer Agreement; (2) he could not waive his Sixth Amendment trial rights without "Court colloquy"; (3) provisions of the proffer agreement are vague, ambiguous, unconscionable, and unenforceable; (4) unilateral mistake of fact voids the proffer agreement; (5) lack of consideration voids the proffer agreement; (6) use of his statements violates his Sixth Amendment right to put on a defense and to have the effective assistance of counsel; (7) even if his proffer statements are admissible, they must be limited for impeachment purposes; (8) broad use of proffer statements violates public policy.

Parra's arguments can be grouped into three categories: (a) some or all of the Proffer Agreement is void in this case because Parra did not knowingly and voluntarily waive his rights (argument (1)); (b) some or all of the form proffer agreement is void in every case because it violates principles of contract law (arguments (3), (4), (5) and (8)); and (c) some or all of the form proffer agreement is void in every case because it violates certain of defendants' constitutional and/or statutory rights (arguments (2) and (6)).[5]

---

4. Parra argued after the January 15, 2004, hearing, that Mr. Colon's testimony did not establish that an interpreter translated Mr. Weinstein's remarks to Parra at the initial proffer session. The Court then granted the government's request to submit additional evidence on this factual issue, and Parra did not object. The Court thereafter received the Declaration of Karen Smith–Moore, a New York City police officer who was present at Parra's first proffer session. Ms. Smith–Moore asserts that a Spanish interpreter interpreted Mr. Weinstein's explanation of the Proffer Statement to Parra and all of Parra's responses to Mr. Weinstein.

5. Parra's seventh legal challenge includes no arguments separate from those encompassed by his other legal challenges, but simply applies his legal challenges to paragraph 3(c) of the Proffer Agreement rather than to the Agreement as a whole. The Court considers each of Parra's legal challenges not just as challenges to the entire Proffer Agreement, but also to each of its sections, excepting the parenthetic clause within paragraph 3(c).

The government now contends that *Velez* resolves in its favor all of Parra's challenges except whether .Parra waived his rights knowingly and voluntarily. Parra concedes that *Velez* resolves his constitutional challenges in the government's favor, but contends that his challenges grounded in contract law principles remain unresolved after *Velez*. In other words, the parties agree that, after *Velez*, category (a) remains at issue and category (c) is no longer at issue, and the parties disagree as to whether category (b) remains at issue.

### Discussion

I. *Parra Knowingly and Voluntarily Waived the Provisions of Rule 410 of the Federal Rules of Evidence*

Defendant first challenges that he did not knowingly and voluntarily waive his rights, and thus that some or all of the Proffer Agreement he signed is invalid and unenforceable. Defendant specifically argues that he understood the waiver encompassed by paragraph 3(b), but not the extent of the waiver encompassed by paragraph 3(c). Because this term of the Proffer Agreement is unenforceable, defendant argues, Rule 410 of the Federal Rules of Evidence prevents the government from introducing proffer statements at any time during the trial other than to impeach the defendant.

■ Generally, statements made in a proffer session are not admissible as evidence against a defendant because of the protections afforded by Rule 410 of the

Federal Rules of Evidence.[6] Rule 410 provides in relevant part:

> [E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who ... was a participant in the plea discussions: ... (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty....

■ A defendant can, however, waive the provisions of Rule 410 of the Federal Rules of Evidence. To be enforceable, a defendant's waiver of the provisions of Rule 410 of the Federal Rules of Evidence must be knowing and voluntary. *See United States v. Mezzanatto*, 513 U.S. 196, 210, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); *Velez*, at 196; *United States v. Ready*, 82 F.3d 551, 556· (2d Cir.1996). "A waiver is made knowingly if the defendant has 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it,' and it is voluntary if it is 'the product of a free and deliberate choice. rather than intimidation, coercion, or deception.'" *Velez*, at 196 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

■ The government must show by a preponderance of the evidence that Parra waived the provisions of Rule 410 knowingly and voluntarily. *See Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (holding that the government bears the burden of proof to show by a preponderance of the evidence that a defendant knowingly and voluntarily waived *Miranda* rights); *United States v.*

---

*See supra,* note 3. The argument that Parra's proffer statements can be admitted for impeachment but not to rebut Parra's lawyer's arguments at trial is addressed within each section of the opinion below.

**6.** Rule 410 of the Federal Rules of Evidence is substantively identical to former Rule 11(e)(6)

of the Federal. Rules of Criminal Procedure. *See United States v. Mezzanatto,* 513 U.S. 196, 197, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995). Rule 11 underwent an amendment in 2002, which ·eliminated Rule 11(e)(6) and added Rule 11(f). Rule 11(f) simply cross-references Rule 410 of the Federal Rules of Evidence.

*Lauersen,* 2000 WL 1693538, at *7 (S.D.N.Y. Nov. 13, 2000) (finding that the government failed to demonstrate that the defendant knowingly waived rights protected by Rule 410). In reviewing the record, the Court is mindful of the decision in *United States v. Ready,* in which the Second Circuit emphasized that a court should scrutinize carefully the circumstances of a defendant's waiver not only of constitutional rights, but also of statutory rights such as the right to appeal a criminal conviction. *Ready,* 82 F.3d at 555–57. "[A]ppellate review," the Court held, "serves an important public interest," *id.* at 556, and thus its waiver by a defendant "should only be enforced if the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." *Id.* at 557. Rule 410, an evidentiary rule, likewise serves an important public interest, as its goal is to encourage plea bargaining. *Mezzanatto,* 513 U.S. at 207, 115 S.Ct. 797; *Velez,* 2004 WL 51261, at *5; *see* Fed.R.Evid. 410 advisory committee's note (" 'Effective criminal law administration in many localities would hardly be possible if a large proportion of the charges were not disposed of by such compromises.' " (quoting McCormick § 251, at 543)).[7] This Court therefore reviews the record for a clear demonstration that Parra knowingly waived the provisions of Rule 410 of the Federal Rules of Evidence.

■ The record in this case clearly demonstrates that Parra waived his rights, including those implicated by paragraph 3(c) of the Proffer Agreement, knowingly and voluntarily. The Court finds Mr. Colon's testimony credible, particularly as it is uncontroverted but for defendant's conclusory, un-cross-examined declaration. Mr. Colon testified that he reviewed the terms of the Proffer Agreement with Parra before they signed it. Mr. Colon translated verbatim the Proffer Agreement, and specifically explained, with examples, paragraph 3(c), the only term that Parra claims he did not understand. Importantly, Mr. Colon explained the right that Parra waived by assenting to the Agreement, the right to exclude his proffer statements at trial. *Cf. United States v. Krilich,* 159 F.3d 1020, 1026 (7th Cir.1998) (Easterbrook, J.) ("A defendant's understanding of the *consequences* of his waiver need not be perfect; it was [the defendant's] understanding of the rights being relinquished, not of all possible repercussions of relinquishing them, that made his waiver knowing."). Mr. Colon, in fact, hardly could have done more to ensure that Parra understood the broad terms of the waiver in the Agreement. Moreover, Mr. Weinstein

---

**7.** To the extent that the maintenance of Rule 410 for all defendants serves an important public interest, waiver of Rule 410 by an individual defendant likewise serves that important public interest, as an individual defendant's waiver fulfills the goal of Rule 410 to encourage efforts of compromise in criminal cases. *See Mezzanatto,* 513 U.S. at 207, 115 S.Ct. 797 ("[I]n this case there is no basis for concluding that waiver will interfere with the Rules' goal of encouraging plea bargaining.... Thus, although the availability of waiver may discourage some defendants from negotiating, it is also true that prosecutors may be unwilling to proceed without it."); *Velez,* at 195–96. In other words, while Rule 410 represents an effort to encourage compromise, Parra's individual waiver of Rule 410 represents compromise itself. Thus waiving the provisions of Rule 410 perhaps implicates the public interest less than does waiving the right to appeal. The Court nevertheless takes the more prudent course of looking for a clear demonstration in the record of a knowing waiver. The evidentiary provisions of Rule 410 protect criminal defendants at trial, and their waiver, like the waiver of constitutional rights, implicates broad due process and fairness concerns. *See United States v. Gomez,* 210 F.Supp.2d 465, 475 (S.D.N.Y.2002); *United States v. Chaparro,* 181 F.Supp.2d 323, 330 (S.D.N.Y.2002).

also explained the terms of the Agreement, and likewise highlighted paragraph 3(c). Upon hearing these explanations, Parra signed the Proffer Agreement and agreed to speak to the government.

The Court does not credit Parra's unsupported statement that he only signed the Proffer Agreement because he believed that doing so offered the only chance for him to get out of jail. Mr. Colon testified that he did not link in any way the proffer sessions to Parra's release. Moreover, Magistrate Judge Ellis granted bail to Parra before Parra met for the January 10, 2002, proffer session in which Parra apparently made incriminating statements. Pursuant to the terms of the bail package, Parra would be released from custody upon posting a $15,000 bond, which Parra did less than a month after that proffer session. Parra agreed to the bail package, and therefore was aware that he was required only to post a bond to be released from custody.

Parra argues that his waiver was not knowing because the Agreement was not explained to him in lay terms. Words such as "rebut" and "sua sponte" in the Agreement were not explained in lay terms, and Parra contends that he did not understand their legal consequences. Parra directs the Court to *United States v. Avendano,* in which the Court noted that the prosecutor used "layman's terms" to explain the provisions of the agreement to the defendant. 2003 WL 22454664, at *7. The Court finds this argument unavailing. Mr. Colon did not specify that he used layman's terms, but testified that he explained the terms of the Proffer Agreement to Parra so that Parra could understand the extent of the waiver. The Court does not weigh lightly Mr. Colon's testimony that he satisfactorily explained the terms of the Proffer Agreement to Parra, given Mr. Colon's experience as a criminal defense lawyer, his familiarity with the terms of the standard proffer agreement used in the Southern District, and his recognition of the "onerous" nature of those terms. While neither Mr. Colon nor Mr. Weinstein remember now, two years later, the precise language they used when discussing the Proffer Agreement with Parra, the Court accepts their testimony that the terms were explained in a way that Parra could understand. Hearing the explanations of his lawyer and the prosecutor, Parra had the opportunity to ask questions. He did not, but chose to sign the Agreement. The evidence here that Parra understood the waiver is surely stronger than that in *Avendano,* 2003 WL 22454664, at *7, in which the Court found the defendant's waiver knowing and voluntary without the testimony of defendant's lawyer, and certainly is stronger than that in *United States v. Lauersen,* in which the Court found the defendant's waiver not knowing and voluntary based on testimony by the defendant's attorney that he did not understand the agreement himself and therefore had been unable to explain it to his client. No. 98 Cr. 1134, 2000 WL 1693538 (S.D.N.Y. Nov. 13, 2000). The government need not prove by a preponderance of the evidence that it used layman's terms, but only that defendant understood the Agreement's terms so that he could knowingly decide whether to sign the Agreement. Here the government has done so.

## II. *The Proffer Agreement Is Not Void Under Principles of Contract Law*

Parra challenges that the Proffer Agreement fails to comply with the principles of contract law, and thus some or all of the Agreement is invalid and unenforceable. Specifically, defendant argues that: (A) *Velez* does not resolve his contract law arguments; (B) provisions of the Proffer Agreement are vague, ambiguous, unconscionable, and unenforceable; (C) unilater-

al mistake of fact voids the Proffer Agreement; (D) lack of consideration voids the Proffer Agreement; and (E) broad use of proffer agreements like Parra's violates public policy. The government responds that *Velez* implicitly resolved these challenges in the government's favor, and that, in any event, the Proffer Agreement complies with principles of contract law.

Proffer agreements are subject to the principles of contract law. *See United States v. Liranzo,* 944 F.2d 73, 77 (2d Cir.1991); *United States v. Khan,* 920 F.2d 1100, 1104 (2d Cir.1990) ("[C]ooperation agreements, like plea bargains, may usefully be interpreted with principles borrowed from the law of contract."); *see also United States v. Alexander,* 736 F.Supp. 1236, 1239 (N.D.N.Y.1989) (noting that rather than selecting New York or federal law as the law applicable to plea agreements, "federal courts have developed a 'common law' of plea agreements [using] ... principles of contract law") (citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Proffer agreements, however, like plea agreements, "are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *Ready,* 82 F.3d at 558 (internal quotations omitted) (" 'The analogy between plea bargains and contracts is far from perfect .... ' " (quoting Frank H. Easterbrook, *Plea Bargaining as Compromise,* 101 Yale L.J.1969, 1974–75 (1992))); *see United States v. Gomez,* 210 F.Supp.2d 465, 475 (S.D.N.Y.2002) ("Although special consideration must be given to a defendant's due process rights, the parties should be held to the terms of their agreement."); *United States v. Heatley,* No. S11 96 Cr. 515, 1999 WL 61816, at *9 & n. 7 (S.D.N.Y. Jan. 29, 1999).

Two rules of interpretation used by the Second Circuit for agreements between prosecutors and defendants are particularly applicable here. *See Ready,* 82 F.3d at 551. First, courts construe ambiguities in proffer agreements against the drafter, the government. *United States v. Chaparro,* 181 F.Supp.2d 323, 330 (S.D.N.Y.2002). Second, courts apply fairness principles to the terms of a proffer agreement. *See Velez,* 2004 WL 51261, at *5; *Ready,* 82 F.3d at 559.

A. Velez *Resolves the Contract Law Arguments*

The Second Circuit's decision in *Velez* resolves Parra's challenges grounded in principles of contract law. The waiver provision at issue in *Velez* is identical to that at issue here. *See Velez,* 2004 WL 51261, at *1. The defendant in *Velez* argued that the waiver provision violated his "constitutional rights to mount a defense, to the effective assistance of counsel, and to a fair trial." *Id.* at *2. The Court rejected defendant's challenges, and held that "where a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not defendant testifies, is enforceable." *Id.* at *5. Given the precision and extent of its holding, *Velez* upholds the Proffer Agreement not only against constitutional challenges, but also against the arguments raised by Parra grounded in contract law. Parra's challenges to the Proffer Agreement based on contract law principles therefore contravene the recent law of this Circuit.

B. *The Proffer Agreement Is Clear and Unambiguous*

Even if *Velez* does not resolve Parra's contract law arguments, the Court

holds that the Proffer Agreement satisfies the principles of contract law.

 Defendant argues that the terms of the proffer agreement included in paragraph 3(c) are ambiguous. "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement.' In deciding whether an agreement is ambiguous, particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought." *Collins v. Harrison–Bode*, 303 F.3d 429, 433 (2d Cir.2002) (internal quotations and alterations omitted) (citing *Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998)). Judges in this Court who have considered the form proffer agreement used by the United States Attorney's Office for the Southern District have uniformly found all of its terms clear and unambiguous.[8] *See, e.g., United States v. Avendano*, 02 Cr. 1059, 2003 WL 22454664, at *4 (S.D.N.Y. Oct. 29, 2003); *Chaparro*, 181 F.Supp.2d at 330; *Gomez*, 210 F.Supp.2d at 472.

Defendant contrasts the "clear language" in paragraph 2 of the Proffer Agreement with that in paragraph 3, clause (c), and paragraph 5 of the Proffer Agreement, which contain "undefined" terms such as "rebut," "argument," and "sua sponte." Defendant's Opposition, at 6. Defendant argues that Parra's Proffer Agreement compares unfavorably with the proffer agreement discussed in *United States v. Dortch*, 5 F.3d 1056, 1068 (7th Cir.1993), which states that although the government would not use proffer statements in its case in chief, "[t]hat is ... the *only* limitation on the use the government may make of your client's statements." *Id.* at 1068 n. 9. The government argues that the Proffer Agreement is not vague and ambiguous, and that defining terms within the Agreement would render it unreadable.

Here, this Court finds that the terms of the Proffer Agreement are clear and unambiguous. The Court agrees that the government need not define every word in the proffer agreement it drafts, as the sensible meaning of words such as "rebut" are clear in light of the document as a whole. To do so would burden the proffer agreement with legal explanations, warnings, and technicalities, perhaps making it less clear. As the Proffer Agreement's terms are clear, construing them against the government changes none of the analysis. Finally, while the agreement discussed in *Dortch* arguably gives a clearer, more direct explanation of the scope of the waiver, this comparison gives the Court no pause in finding that Parra's Proffer Agreement is not ambiguous.

### C. *The Proffer Agreement Is Not Void for Unilateral Mistake of Fact*

 Parra claims that he was mistaken as to a basic assumption of the Proffer Agreement. He claims that he assumed

---

**8.** The findings of the Court in *Lauersen*, to which defendant cites here, that the exceptions contained in the proffer agreement "engulf[ed]" the rule that the government would not introduce proffer statements in its case-in-chief, were made to resolve the issue of whether the defendant waived particular rights knowingly and voluntarily. 2000 WL 1693538, at *7. *Lauersen* did not address whether the terms of the proffer agreement were ambiguous according to principles of contract law. The government also notes here that it has slightly altered its form proffer agreement since the Court decided *Lauersen*.

that by signing the Proffer Agreement he was going to reduce his jail time. The government correctly notes that Parra's mistake of fact argument simply restates in contract law terms his argument that he did not knowingly and voluntarily waive his rights. The factual predicate for each is the same, namely, the extent of Parra's understanding at the time he agreed to talk to the government at the proffer session. As the Court found above that Parra knowingly and voluntarily waived his rights, the Court accordingly finds also that Parra did not operate under a unilateral mistake of fact. The Court declines to invalidate the Proffer Agreement on this ground.

### D. The Proffer Agreement Is Not Void for Lack of Consideration

■ Parra argues that the government offers no benefit to him through the Proffer Agreement and therefore that the Agreement should be invalidated because the lack of consideration renders it unconscionable. Defendant draws the Court's attention to paragraph (1) of the Proffer Agreement, which clarifies that the government, by meeting in a proffer session with defendant, essentially promises nothing in return. Defendant acknowledges that by meeting with him, the government confers a benefit. See Gomez, 210 F.Supp.2d at 475 (cited with approval in Velez, 354 F.3d 190). Defendant argues, however, that the benefit conferred by the government is not explicated in the Proffer Agreement, and thus that the Agreement itself, the written contract, "is devoid of any benefit to the defendant." (Defendant's Opposition, at 9.)

■ Although defendant's argument has some visceral appeal, it disappears on further analysis of the case law. The contract law principle to which defendant refers states that to form a contract parties must exchange bargained-for promises or performance. Rest. (Second) of Contracts, § 71 (1981); see First Fed. Savs. Bank v. Nomura Sec., 1995 WL 217539, at *5 (S.D.N.Y. Apr. 12, 1995); see also VKK Corp. v. National Football League, 244 F.3d 114, 127 (2d Cir.2001) (noting the parties' agreement that "consideration is required under federal law"). "Parties are free to make their own bargains and, absent a claim of fraud or unconscionability, it is 'enough that something of real value in the eye of the law was exchanged.'" Personalized Media Communications, L.L.C. v. StarSight Telecast, Inc., 2000 WL 1457079, at *4 (S.D.N.Y. Sept. 28, 2000) (quoting Apfel v. Prudential–Bache Sec. Inc., 81 N.Y.2d 470, 600 N.Y.S.2d 433, 435, 616 N.E.2d 1095 (1993)). Courts reviewing contracts do not scrutinize the adequacy of consideration, but simply verify that some consideration, however minimal, has been provided. First Fed., 1995 WL 217539, at *5 (citing Apfel, 600 N.Y.S.2d at 435, 616 N.E.2d 1095). The parties here do not cite to, and the Court has not found any case that has addressed the issue of consideration in a proffer agreement. Other defendants have challenged plea agreements when the government allegedly has either failed to follow through on its end of the bargain, see, e.g., Khan, 920 F.2d at 1105 ("[T]he government's discretion does not grant it power to turn its back on its promises to the defendant under the cooperation agreement . . . ."), or has made a promise that has no value, see, e.g., United States v. Lockhart, 58 F.3d 86, 88 (4th Cir.1995) (finding that the government's promise in the plea agreement to move for a downward departure if defendant provided substantial assistance was not illusory, even though the government gave defendant no opportunity to provide assistance); see also Welsh S. White, Confessions Induced by Broken Government Promises, 43 Duke

L.J. 947, 980–82 (1994) (collecting cases in which prosecutors offer seemingly illusory promises in exchange for guilty pleas). Defendant presents no such challenge here, however, and the facts indicate neither that the government has broken a promise nor that it has made an illusory promise.

Judges in this Court have found uniformly that a defendant receives something of value by signing the form proffer agreement. *See, e.g., Gomez,* 210 F.Supp.2d at 475; *Chaparro,* 181 F.Supp.2d at 334 n. 9. In particular, a defendant receives "the opportunity to be heard" by the government, *Gomez,* 210 F.Supp.2d at 475, an opportunity to which the defendant otherwise has no right. This Court agrees that Parra received a benefit by assenting to the Proffer Agreement. As the government notes, "[t]he Proffer Agreement is the first step towards a potential cooperation agreement," and, without the Agreement, Parra owned no entitlement to that first step. Gov't Reply, at 9.

█ Parra's more intricate argument, that the Proffer Agreement is invalid because it does not state, in writing, the benefit of the bargain offered by the government, does not persuade the Court that the Agreement is void. The Agreement does not state precisely that the government agrees to listen to the defendant, but does state the following: "The Client has agreed to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions." Defendant understandably would prefer that the Agreement he signed include some clearer statement of the government's contractual obligation to evaluate the defendant's statements, perhaps fearing that the terms of the Agreement authorize the government to ignore defendant's statements other than when they incriminate him. The Court agrees that the written statement of the bargain set forth by the government in paragraph (1) is minimal, but it sufficiently memorializes the benefit the government confers. The Agreement as written obligated the government, in this case, to hear and evaluate Parra's statements, as a first step toward a possible compromise. *Cf. Mezzanatto,* 513 U.S. at 210, 115 S.Ct. 797 ("[T]radition and experience justify our belief that the great majority of prosecutors will be faithful to their duty." (internal quotations omitted)). Thus the Court is satisfied that the Proffer Agreement sets forth consideration and is not invalid on that ground.

### E. *Broad Use of the Government's Proffer Agreement Does Not Violate Public Policy*

█ Parra contends that the broad use of proffer statements that include provision 3(c) would undermine plea bargaining and is against public policy concerns. Parra argues essentially that the purpose of Rule 410 of the Federal Rules of Evidence is to encourage compromise between prosecutors and defendants and that use of proffer statements like that at issue here contravenes that purpose. Parra frames his argument generally, rather than according to principles of contract law or constitutional law. Parra asserts the public policy challenge not as a technical contract law claim, but as the amalgamation of his several other arguments, all of which are meant to show that the Proffer Agreement presented to Parra is somehow fundamentally unfair.

*Velez* completely forecloses Parra's public policy argument, and the Court therefore rejects it here. At 194–96.

## Conclusion

For the reasons set forth above, the Court grants the government's motion in limine. The Court rules that the statements Parra made at proffer sessions following his arrest are admissible to impeach Parra if he testifies or to rebut arguments made on Parra's behalf that contradict the proffer statements.

SO ORDERED.

### GOVERNMENT EXHIBIT 1

*PROFFER AGREEMENT*

With respect to the meeting of Claudio Parra ("Client") and his attorney, Raymond L. Colon, Esq., with Assistant United States Attorney Jason Weinstein to be held at the Office of the United States Attorney for the Southern District of New York on October 25, 2001 ("the meeting"), the following understandings exist:

(1) **THIS IS NOT A COOPERATION AGREEMENT.** The Client has agreed to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions. By receiving Client's proffer, the Government does not agree to make a motion on the Client's behalf or to enter into a cooperation agreement, plea agreement, immunity or non-prosecution agreement. The Government makes no representation about the likelihood that any such agreement will be reached in connection with this proffer.

(2) In any prosecution brought against Client by this Office, except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting.

(3) Notwithstanding item (2) above: (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of Client by the Government; (b) in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify; and (c) the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised *sua sponte* by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.

(4) The Client understands and agrees that in the event the Client seeks to qualify for a reduction in sentence under Title 18, United States Code, Section 3553(f) or United States Sentencing Guidelines, Sections 2D1.1(b)(6) or 5C1.2, the Office may offer in evidence, in connection with the sentencing, statements made by the Client at the meeting and all evidence obtained directly or indirectly therefrom.

(5) To the extent that the Government is entitled under this Agreement to offer in evidence any statements made by Client or leads obtained therefrom, Client shall assert no claim under the United States Constitution, any statute, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be

suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

(6) If this Office receives a request from another prosecutor's office for access to information obtained pursuant to this Proffer Agreement, this Office may furnish such information but will do so only on the condition that the requesting office honor the provisions of this Agreement.

(7) It is further understood that this Agreement is limited to the statements made by Client at the meeting and does not apply to any oral, written or recorded statements made by Client at any other time. No understandings, promises, agreements and/or conditions have been entered into with respect to the meeting other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties.

(8) The understandings set forth in paragraphs 1 through 7 above extend to the continuation of this meeting on the dates that appear below.

(9) Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.

Dated: New York, New York

October 25, 2001

MARY JO WHITE
United States Attorney for the
Southern District of New York

By: _____
Assistant United States Attorney

_____
Client

_____
Attorney for Client

_____
Witness

**Dates of Continuation**

1 − 10 − 02

3 − 25 − 02

**Initials of counsel, Client, AUSA, witness**

JHK

JHC

interpreter