NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0491n.06

No. 14-5929

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 22, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DEMARCUS FIFER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western District |
| UNITED STATES OF AMERICA, | ) | of Tennessee |
| | ) | |
| Respondent-Appellee. | ) | |

_____/

**Before: GUY, BOGGS, and MOORE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Demarcus Fifer made admissions during a proffer session that were admitted into evidence during his federal criminal trial. Fifer was convicted of both counts of the indictment, and sentenced as a career offender to concurrent terms of imprisonment. In this appeal from the denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence decided by the same judge who presided over the trial, Fifer contends that his attorney provided ineffective assistance of counsel by agreeing and advising Fifer to agree to a conditional waiver in the proffer agreement that permitted the government to use Fifer's statements in its case-in-chief "to rebut any evidence, argument or representations offered by or on behalf of [Fifer] . . . should any prosecution of [Fifer] be undertaken." The district court found Fifer had not demonstrated that his attorney's performance was deficient. For the reasons that follow, we affirm.

**I.**

In the early hours of May 11, 2001, Sheriff's Deputies Kevin Helms and Chad Cunningham observed what they believed to be a hand-to-hand drug transaction between the driver of a red pickup truck that was stopped in front of a house and a man who walked from the house and leaned into the driver's side window. When the deputies approached, Helms looked in the open window and saw a bag of suspected crack cocaine in the driver's lap. Helms asked the driver to turn off the truck, and Helms reached into the truck to shutoff the ignition when the driver did not comply. Before he could do so, the driver put the truck into gear and dragged Helms for 20 or 30 feet before getting away. The truck was found abandoned a short time later, and a loaded 9mm Jennings handgun was recovered from its floorboard.

Helms testified that his investigation led him to identify Fifer as the driver—although the truck was registered to someone else—and a warrant for Fifer's arrest was issued. Fifer was observed coming and going from an apartment over several days, and was arrested after leaving the apartment on May 30, 2001. Fifer had keys to the apartment—where he said he lived—and officers recovered some marijuana and approximately 13 grams of crack cocaine from Fifer's pockets. A search warrant obtained for the apartment resulted in the seizure of two scales, plastic baggies, a dish and razor blade with cocaine residue, over 1,800 grams of marijuana, and some papers with Fifer's name on them. Also seized was a manufacturer's box for a Jennings 9mm handgun with a serial number matching the one recovered from the abandoned truck a few weeks earlier.

Although state charges were brought initially, a two-count federal indictment followed charging Fifer with (1) being a felon in possession of the Jennings 9mm handgun on May 11, 2001, and (2) possessing with intent to distribute the approximately 13 grams of cocaine base

taken from him on May 30, 2001. Fifer retained James V. Ball, an experienced attorney who had represented Fifer previously and with whom Fifer had a personal relationship. After Ball and Fifer discussed the strength of the government's evidence against him and the impact of Fifer's prior criminal history on any federal sentence, Fifer decided to pursue a plea bargain by offering cooperation that could lead the government to make a § 5K1.1 motion for a sentence below the then-mandatory Guidelines range. Ball contacted AUSA David Henry, and a proffer meeting was arranged for February 14, 2003.

Before the proffer meeting, Fifer, Ball, and Henry signed a two-page proffer letter that set forth the terms of the proffer. In it, the government agreed to give full consideration to Fifer's statements in determining a proper plea agreement, but reserved discretion to decide whether Fifer's efforts constituted "substantial assistance" for purposes of a § 5K1.1 or Rule 35 motion. Fifer, in turn, was required to "respond truthfully and completely to any and all questions posed to [him] during the meeting." The government agreed not to use Fifer's statements in its case-in-chief, except that the government could use Fifer's statements to cross-examine him if he testified, "or to rebut any evidence, argument or representations offered by or on behalf of [Fifer] in the government's case-in-chief in connection with the trial and/or at sentencing, should any prosecution of [Fifer] be undertaken." The government also "reserve[d] the right to use any statements or information provided by [Fifer] in any prosecution for false statements, obstruction of justice or perjury." Ball testified that he and Fifer discussed all of the terms of the proffer agreement privately and without interruption before they signed it.

During the proffer that followed, Fifer made admissions in the presence of his attorney, the prosecutor, and law enforcement that were later summarized on an FBI Form 302. When asked about the incident with the truck, Fifer admitted to being the driver and possessing the

9mm Jennings handgun that was found in the truck. He also said the bag in his lap contained marijuana and not crack cocaine, and acknowledged that he was in possession of 13 grams of crack cocaine at the time of his arrest. Although Ball believed that Fifer had provided valuable information, a plea agreement was not reached before Fifer "changed his mind" about cooperating and asked for a new attorney in April 2003. Ball was allowed to withdraw, and Robert Irby was appointed to represent Fifer.

During trial in February 2004, Irby argued in opening statement and suggested through his cross-examination of Helms that Fifer was not the driver of the truck and so had not possessed the firearm, and that Fifer was a drug user but not a drug dealer. The government moved to admit Fifer's proffer statements in its case-in-chief, and the district judge conducted an evidentiary hearing outside the presence of the jury to decide their admissibility. Defense counsel did not dispute that the statements attributed to Fifer had been made, but argued that the statements should be excluded under Rule 403, 408, or 410 of the Federal Rules of Evidence. Ball testified during the hearing, although Fifer did not.

In overruling defense counsel's objections, the district court found, in part, that Fifer's proffer statements would be excludable as "plea discussions" covered by Rule 410, except that Fifer had knowingly and voluntarily waived objection to the introduction of his proffer statements to rebut arguments and evidence offered on his behalf. The district court also concluded that the statements were admissible under Rule 403. On direct appeal, this court rejected claims that Fifer's statements should have been excluded under Rule 403, 408 or 410. *See United States v. Fifer*, 206 F. App'x 502, 509-10 (6th Cir. 2006). In doing so, we recognized that, "absent evidence that a waiver is unknowing or involuntary, defendants may waive Fed. R.

Evid. 408 and 410 objections implicitly and explicitly during plea bargaining." *Id*. at 509 (citing

*United States v. Mezzanatto*, 513 U.S. 196, 200 (1995)).

Fifer's proffer statements were admitted into evidence through testimony from Ball and the admission of a redacted version of the FBI Form 302. Fifer elected not to testify, but the defense presented testimony from other witnesses to show that Helms had misidentified Fifer as the driver. The owner of the truck was not located, but a relative of his testified that "Harold" owned it and often lent it out to others. Fifer's proffer statements were directly contradicted by Alvin Wiseman, who was the man that officers saw go up to the truck that night. Although he did not tell the police at the time, Wiseman testified that Harold was driving—not Fifer—when Wiseman went over to ask about borrowing the truck. Wiseman also conceded, however, that he did not know that Fifer had already admitted that he was the driver that night. The government argued in closing that Fifer's statements were inconsistent with Wiseman's testimony, and the jury's only question during deliberations related to the Form 302.

The jury found Fifer guilty of both the firearm and possession-with-intent-to-distribute counts. Fifer was sentenced (and resentenced on remand) as a career offender to concurrent terms of 120 and 292 months, respectively. After exhausting his direct appeals, Fifer raised a number of claims in his § 2255 motion. That motion was denied by the same judge who presided over the trial, and this court granted a certificate of appealability on the single claim at issue here. On appeal from the denial of a § 2255 motion, we review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998).

**II.**

To establish a claim of ineffective assistance of counsel, Fifer must show both that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks omitted). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

To meet this burden, Fifer contends that it was objectively unreasonable for defense counsel to have agreed and advised him to agree to an unusually broad waiver that counsel himself did not understand. Fifer also argues that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different.

First, Fifer seizes on testimony that Ball gave during the hearing as proof that Ball did not comprehend the significance of the waiver provision. The district judge inquired specifically about the challenged waiver provision, including that the statements could be used "to rebut any evidence, argument, or representations offered by or on behalf of your client and to be used in the government's case in chief." Directing Ball's attention to that language, the district judge asked Ball whether it was "something that you contemplated carefully" and whether Ball "recognize[d] that it could constitute a waiver of the defendant's rights." Ball answered both questions, "Yes, sir." Not leaving it there, the district judge confirmed that Ball recognized that evidence that might not be admitted under the Rules of Evidence could become admissible

because of this provision.

Minimizing this testimony, Fifer points to the response Ball then gave during recross examination by Mr. Irby. The relevant exchange was as follows:

> Q [Mr. Irby]. When you just discussed the - - - provisions with the Judge, and you indicated you thought - - you indicated your understanding was that if you didn't follow through with the agreement, you would be waiving certain things. Did that list of things include any provisions or tools or protections that were included in the Federal Rules of Evidence, such as Rule 410, 408, or 403?
>
> A [Mr. Ball]. Well, I mean, each one of those would have to be addressed specifically. And you probably are addressing them in this trial. In other words, I don't think that the third paragraph rendered him mute in this court. In order (sic) words, if it fell through, which it did, and he went to trial, his lawyer could, you know, take issue with, you know, each and every evidentiary issue, you know, despite every - - I don't know if I am saying it right. But he could, you know, it depended on what we were talking about and he could take advantage of the rules and hope to persuade His Honor to rule in his favor. I don't think that he was waiving, you know, the rules. He was making some admissions that were, you know, going to be introduced in his trial.

(Cr. R. 123, pp. 343-44.) In response to counsel's question, Ball explained that, if the negotiations fell through, trial counsel could "take issue with, you know, each and every evidentiary issue," and added, "I don't think that he was waiving, you know, the rules." But, in the next breath, Ball added that "[Fifer] was making some admissions that were, you know, going to be introduced in his trial." Mr. Irby also asked whether Ball thought that no rights or privileges under the Rules of Evidence were being waived unless they were specifically referred to in the proffer letter. Ball answered, "I didn't say that," and added that trial counsel could argue that something was not covered by the agreement.

In his response, Ball is making the point that waiver of objection to the admission of statements that would otherwise be excludable under Rule 408 or 410 would not preclude trial counsel from raising other evidentiary objections, if any, that might apply. In fact, in this case, the district judge recognized that the waiver did not preclude defense counsel from objecting to

the admission of the proffer statements under Rule 403. And, after finding that the waiver was knowing and voluntary, the district judge made a separate ruling finding that the statements also were admissible under Rule 403. (Cr. R. 124, p. 392.) ("Well, as to 403, I mean, it it's clear this is as highly relevant as anything can be. It is prejudicial, but I don't believe it is unfairly prejudicial.") Mr. Ball's distinction was nonetheless a valid one.[1]

Still, the district judge did not leave it at that. Returning to the specific language in the proffer agreement, the district judge again asked Ball about his understanding of the waiver provision.

> THE COURT: What I was really asking, Mr. Ball, is . . . what did you, and by implication Mr. Fifer, understand about paragraph three, and specifically (b). Was there an understanding that the evidence that was obtained from - - the evidence directly obtained during these meetings, the evidence from the statement or statements that Mr. Fifer gave, was there an understanding that if he testified, he was allowing those statements to be used for cross examination against him?
>
> THE WITNESS:      Yes.
>
> . . .
>
> THE COURT: But, what about the issue here of was there an understanding that the statements that he gave could be used by the government in its case in chief to rebut any evidence or any argument, or any representations that he made, that Mr. Fifer made, or that were offered on his behalf by his counsel, was that something that both parties understood when they entered into this agreement, that they entered into it knowingly?
>
> THE WITNESS: Yes, sir, I think it was.
>
> THE COURT: You wrote down there on paragraph three -- or it says third. So on page one and look down there at (b).
>
> THE WITNESS: (b), yes, sir.
>
> THE COURT: "The government may use these statements, and so forth."
>
> (Witness reading document)

---

[1]The government proposed a redacted version of the FBI Form 302, indicating that it had no "intention to delve into anything else that could possibly be 404(b)" material.

THE WITNESS: Yes, sir. That was my understanding that it could be used, and particularly if it turned out he was lying to them or didn't give them any information, or anything.

(Cr. R. 123, pp. 345-47.) The record does not support a finding that Ball did not comprehend the waiver provision, and the district judge did not abuse his discretion in relying on the inquiry he made during trial in denying Fifer's § 2255 motion.

A district judge may rely on his recollections from trial in deciding a § 2255 motion, and, here, the district judge not only conducted the trial but directly questioned Ball about his understanding of the conditional waiver provision. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1996). An evidentiary hearing is not required when a petitioner's claims "cannot be accepted as true because they are contradicted by the record, [are] inherently incredible, or are conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo*, 178 F.3d at 782). Fifer's assertion that Ball did not comprehend the waiver provision is contradicted by the testimony from Ball, which was given under oath and close in time to the proffer itself.

Fifer also argues that it was unreasonable for Ball to advise him to agree to the waiver provision unless Ball was certain that Fifer would plead guilty. Although Fifer implies that Ball did not understand the consequences of the waiver because Ball testified that Fifer "could have gone to trial if he wanted to," the context makes clear that Ball recognized Fifer's choice was between going to trial and pursuing a favorable plea bargain by offering to provide substantial assistance that could lead the government to make a § 5K1.1 motion for a below-Guidelines sentence. Ball candidly acknowledged that to pursue a plea deal based on cooperation is "almost a little like Russian Roulette in a way" because there are a lot of uncertainties. But, Ball also believed that the best strategy was for Fifer to pursue a plea bargain to "get away from the

Guidelines," and stressed to Fifer that if he wanted to talk to the government he had to tell the truth. The record does not support a claim that Ball did not comprehend the scope of the waiver provision or failed to advise Fifer of the consequences of making the proffer subject to the conditional waiver of the protections ordinarily afforded to statements made during plea discussions.

Fifer also asserts that Ball's advice was objectively unreasonable because the waiver provision was "unusually broad" under the circumstances. The criticism seems to be that the proffer agreement included a waiver that allowed the government to use Fifer's proffer statements not just to impeach him if he testified, but also to rebut other evidence or arguments presented on behalf of Fifer in the government's case-in-chief. Importantly, Fifer clarified that he is not claiming that a waiver of this breadth is unenforceable or should be disapproved "in any generalized sense."

Although a narrower waiver provision was at issue in *Mezzanatto*, the Supreme Court held that the evidentiary protections afforded by Rule 410 are waivable. *United States v. Mezzanatto*, 513 U.S. 196, 198 (1995). Specifically, the defendant in *Mezzanatto* wanted to make a proffer to discuss the possibility of cooperating and, as a condition of the proffer, the government required the defendant to be "completely truthful" and to agree "that any statements he made during the meeting could be used to impeach any contradictory testimony he might give at trial if the case proceeded that far." *Id.* But, proffer agreements are contractual in nature, and the fact that a more limited waiver was involved in *Mezzanatto* and other cases does not establish a "norm." In fact, proffer agreements with broader waiver provisions are also well-represented in the case law.

For example, in *Shannon*, we held that a waiver provision that allowed the government to use the defendant's proffer statements "to rebut any evidence offered by [the defendant]" applied to evidence elicited by defense counsel during cross-examination of a government witness. *United States v. Shannon*, 803 F.3d 778, 781 (6th Cir. 2015). In *Shannon*, this court relied on even broader waivers permitting the government's use of a defendant's proffer statements "to rebut any evidence offered or elicited, or factual assertions made, by or on behalf of [him]," *id*. at 784 (quoting *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005)), and to "rebut any evidence or arguments offered on [the defendant's] behalf," *id*. (quoting *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008)). Similarly, the waiver provision agreed to in *Velez* provided that the government could use the defendant's proffer statements "to rebut any evidence or arguments offered by or on behalf of [defendant]." *United States v. Velez*, 354 F.3d 190, 192 (2d Cir. 2004).

Fifer has not shown that the waiver in this case was so unusually broad that it would be objectively unreasonable for Ball to have advised Fifer to agree to it as a condition of the proffer. Nor is there any evidence to suggest that the prosecutor would have received Fifer's proffer without the waiver provision that was included in the proffer agreement. To the extent that Fifer faults the advice he received because the decision to make the proffer was risky, Fifer has not demonstrated that the strategy was objectively unreasonable under the circumstances. Because Fifer has not shown that Ball's performance was deficient, the district court's denial of his § 2255 motion is **AFFIRMED.**

**KAREN NELSON MOORE, Circuit Judge, dissenting.**   The statements Demarcus Fifer made during his proffer session sealed his fate at trial.   The government was able to introduce into evidence the Form 302 memorializing those statements because Fifer's proffer agreement contained a sweeping waiver provision.   The record in this case gives me good reason to doubt that Fifer's one-time attorney, James Ball, understood that waiver provision's effect.

Because there are outstanding issues of fact regarding both *Strickland* prongs, the district court abused its discretion when it denied Fifer's 28 U.S.C. § 2255 motion without first holding an evidentiary hearing.   The majority's resolution of this case—which, apart from one solitary sentence, ignores completely Fifer's argument on appeal that he was entitled to an evidentiary hearing—fails for the same reason.   I respectfully dissent.

The majority opinion makes no mention of the *very* low bar Fifer must meet in order to obtain an evidentiary hearing.   "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court *must* hold an evidentiary hearing to determine the truth of the petitioner's claims.'"   *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).   Although we review for an abuse of discretion "a district court's refusal to conduct an evidentiary hearing with respect to a defendant's § 2255 motion," *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012), "[a]n evidentiary hearing is required unless the record *conclusively shows* that the petitioner is entitled to no relief." *Valentine*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *accord Pola v. United States*, 778 F.3d 525, 532–33 (6th Cir. 2015).

The record in Fifer's case does not conclusively demonstrate that his ineffective-assistance-of-counsel claim fails.   Far from it.   There are questions of fact as to whether Ball's

performance was constitutionally deficient. And there are questions of fact as to whether Ball's deficient performance prejudiced Fifer. For both reasons, the district court should have conducted an evidentiary hearing before ruling on Fifer's § 2255 motion.

Ball arguably rendered objectively deficient assistance because it is unclear whether he understood the sweeping effect of the waiver provision in Fifer's proffer agreement. Consider the following exchange between Ball and Fifer's trial counsel during a hearing at Fifer's trial:

> Q. [Y]ou indicated your understanding was that if you didn't follow through with the agreement, you would be waiving certain things. Did that list of things include any provisions or tools or protections that were included in the Federal Rules of Evidence, such as Rule 410, or 408, or 403?
>
> A. Well, I mean, each one of those would have to be addressed specifically. And you probably are addressing them in this trial. In other words, I don't think that the third paragraph rendered him mute in this court. In order words, if it fell through, which it did, and he went to trial, his lawyer could, you know, take issue with, you know, each and every evidentiary issue, you know, despite every—I don't know if I am saying it right. But he could, you know, it depended on what we were talking about and he could take advantage of the rules and hope to persuade His Honor to rule in his favor. I don't think that he was waiving, you know, the rules.

R. 123 (Trial Tr. at 343:24–44:16). Ball's response inspires little confidence in his comprehension of the waiver provision.

Nonetheless, the majority reasons that the district judge's colloquy with Ball—both before and after Ball delivered this muddled response—confirms that Ball understood the waiver provision. Majority Op. at 6–9. Under the majority's reading of the transcript, Ball (1) satisfied the district judge that he comprehended the scope of the waiver, (2) potentially suggested that he did not understand the waiver, and finally (3) told the district judge that he appreciated the waiver's effect. Ball's inconsistent responses thus raise a fact question: did Ball understand the

effect of the waiver provision?  Our caselaw makes plain that this is the type of fact question that merits development at an evidentiary hearing.

There are also outstanding fact issues as to whether Ball's defective performance prejudiced Fifer.  The majority has identified the most salient of these issues:  during deliberations, Fifer's jury sent the district judge a note asking whether "Fifer [was] admitting to the[] events in [the Form 302], even without his signature on this exhibit."  R. 125 (Trial Tr. at 689:18–20); Majority Op. at 5.  This was the *only* question the jury asked during its deliberations.  Majority Op. at 5.

The Form 302 plainly had an impact on Fifer's jury.  That is not surprising, given that the Form 302 memorialized Fifer's admissions that he had possessed a firearm *and* a distribution-level amount of crack cocaine.  Were it not for the waiver provision in Fifer's proffer agreement—a proffer agreement Fifer entered into on Ball's advice—that Form 302 likely would have been excluded at Fifer's trial.

Fifer's burden "for establishing an entitlement to an evidentiary hearing is relatively light."  *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (quoting *Turner*, 183 F.3d at 477).  Fifer has met that burden here:  he has raised questions of fact regarding *Strickland*'s deficient-performance and prejudice prongs.  The district court should have conducted a hearing to resolve those questions.  Because the district court rejected Fifer's § 2255 motion out of hand, I would remand his case to the district court for an evidentiary hearing.