United States v. Rosemond

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of December, two thousand fourteen.

PRESENT:  ROBERT D. SACK,
          GERARD E. LYNCH,
          DENNY CHIN,
                    *Circuit Judges.*
_____

UNITED STATES OF AMERICA,
                    *Appellee,*

          v.                              No.    13-4262

JAMES ROSEMOND, aka JIMMY HENCHMAN,
                    *Defendant-Appellant,*

MARIO ROSEMOND, DENNIS GRAHAM aka MARK
BLACK aka BIGGA, JASON WILLIAMS, DARRON
LAMONT BENNETT aka L aka DIRT,
                    *Defendants.*

_____

**FOR APPELLANT:**          MATTHEW M. ROBINSON, Robinson & Brandt PSC,
                            Covington, KY.

**FOR APPELLEE:**           LAN NGUYEN, Assistant United States Attorney (Peter
                            A. Norling, Una Dean, Souyma Dayananda, Assistant
                            United States Attorneys, *on the brief*), *for* Loretta E.
                            Lynch, United States Attorney for the Eastern District of
                            New York, New York, NY.

Appeal from the United States District Court for the Eastern District of New York (John Gleeson, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED IN PART and VACATED IN PART, and the case is REMANDED for further proceedings.

Defendant James Rosemond appeals from a judgment of conviction, following a jury trial, for engaging in a Continuing Criminal Enterprise ("CCE"), 21 U.S.C. §§ 848(a) and 848 (b); conspiring to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); two counts of attempting to distribute cocaine, 21 U.S.C. §§ 846 and 841(b)(1)(A); three counts of distributing cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); possessing a firearm in connection with drug trafficking, 18 U.S.C. § 924(c)(1)(A)(i); possessing a firearm as a felon, 18 U.S.C. § 922(g)(1); money laundering conspiracy, 18 U.S.C. §§ 1956(a)(1)(A)(I) and 1956(h); engaging in unlawful monetary transactions involving over $10,000, 18 U.S.C. § 1957; unlawfully structuring financial transactions, 31 U.S.C. § 5324(a)(3); and obstruction of justice, 18 U.S.C. § 1512(b)(3). He was sentenced principally to life imprisonment.

Rosemond contends that (1) he was denied his Sixth Amendment right to conflict-free counsel; (2) juror misconduct violated his due process and fair trial rights; (3) the district court erred in admitting evidence of cocaine base, for which Rosemond had not charged; (4) facts necessary to trigger the mandatory minimum sentence of life imprisonment for his CCE conviction were not submitted to the jury, in violation of

2

_Alleyne v. United States_, 133 S. Ct. 2151 (2013); (5) conviction on both the CCE count and the lesser included offense of conspiring to distribute cocaine violated his Double Jeopardy rights; and (6) the government's use of his proffer statements violated his Fifth Amendment right against self-incrimination. We assume the parties' familiarity with the underlying facts and procedural history.

1.      Conflict-Free Counsel

Rosemond contends that his trial counsel, Gerald Shargel, labored under a conflict because he was present for Rosemond's proffer sessions and might have been called as a witness to contradict the government's account of the sessions. Rosemond further contends that the trial court failed to secure his knowing and voluntary waiver of this conflict, in violation of his Sixth Amendment rights.

A district court has "two distinct obligations . . . when the specter of conflicts of interest arises." _United States v. Levy_, 25 F.3d 146, 153 (2d Cir. 1994). First, there is an "inquiry obligation" to "determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." _Id_. Second, if the inquiry reveals an actual or potential conflict, "the court has a subsequent 'disqualification/waiver' obligation." _Id_.

Here, the trial court satisfied its inquiry obligation by holding a hearing to examine whether Shargel's role as a potential witness presented an actual or potential conflict. At that hearing, Shargel explained that his associate, Ross Kramer, who did not serve as trial counsel, attended all but one of the proffer sessions and had the same recollection of these

sessions as Shargel. Shargel further stated that, for the one proffer session Kramer did not attend, Shargel's recollection did not substantially differ from the government's. Based on those representations, the trial court correctly determined that Shargel was not conflicted because another witness was available to provide the same testimony that Shargel could have provided.

Thus, Rosemond's contention that the trial court failed to obtain a waiver of his right to conflict-free counsel rests on the false premise that his trial counsel was conflicted. Where, as here, "the court's inquiry reveals that there is no genuine conflict at all, the court has no further obligation." Levy, 25 F.3d at 153.

2.    Juror Misconduct

Rosemond asserts that his fair trial and due process rights were violated by two separate incidents of juror misconduct. First, Rosemond argues that the trial court erred in not immediately excusing a juror who attempted to speak with a prosecutor after jury selection and allegedly gave prosecutors a "thumbs-up" sign. The court questioned the juror about this incident on the first day of the trial and credited her explanation that she did not give such a sign and that, while she could not remember why she attempted to speak to one of the prosecutors, it did not involve Rosemond's case. As we "review a trial judge's handling of juror misconduct for abuse of discretion," United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003) (alterations and internal quotation marks omitted), we would be reluctant to second guess the trial court's credibility determination. However, we need not reach this question, as the juror was excused the following day upon a

4

renewed motion by Rosemond. The juror – who sat for only the first day in a three-week trial – took no part in deliberations, and there is no evidence that she discussed the case with her fellow jurors. Thus, Rosemond has made no showing that his fair trial or due process rights were prejudiced by the juror's one day of service.

Second, Rosemond asserts that one or more jurors discovered information on the internet linking Rosemond to the murder of rapper Tupac Shakur and pressured other jurors to convict Rosemond based on this extrajudicial research. For support, Rosemond references affidavits submitted by his fiancée, Tamika Wooley, and by Jarrod Whittaker. But neither of these affidavits mention any extrajudicial research. Rather, Wooley simply claimed to have overheard two jurors expressing frustration that another juror took longer than they did to conclude Rosemond was guilty. And Whittaker's affidavit states only that he was told that two jurors believed "Rosemond was guilty due to his involvement in the Tupac thing." Gov't App'x at 208. As the defense had elicited trial testimony that government agents had questioned Rosemond about Shakur's murder, the jury's knowledge of "the Tupac thing" does not suggest that jurors conducted extrajudicial research. At most, the affidavits suggest that testimony regarding Rosemond's possible involvement in Shakur's murder had some effect on some jurors. Such an allegation is insufficient to warrant "[p]ost-trial jury scrutiny[,] [which] is disfavored because of its potential to undermine full and frank discussion in the jury room." United States v. Stewart, 433 F.3d 273, 302 (2d Cir. 2006) (internal quotation marks omitted).

5

3. Admission of Cocaine Base Evidence

Rosemond contends that the trial court erroneously admitted into evidence cocaine base – a drug he was not charged with possessing – recovered from a "stash house" used by Rosemond's organization. Rosemond argues that the government failed to notify him of its intent to introduce the cocaine base under Fed. R. of Evid. 404(b) and that in any event the drugs were not admissible under Rule 404(b).

"[E]videntiary rulings are subject to harmless error" review, United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009), and we conclude that any error in admitting the cocaine base was harmless. We first reject any claim of unfair surprise, as Rosemond's attorney had previously signed a stipulation that the cocaine base was "admissible as evidence in the trial." Gov't App'x at 186-87. Moreover, prejudice is minimized where, as here, "the evidence did not involve conduct more serious than the charged crime[s] and the district court gave a proper limiting instruction." United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000). Lastly, the evidence of Rosemond's guilt was overwhelming, rendering it "highly probable that [the disputed evidence] did not contribute to the verdict." United States v. Kaiser, 609 F.3d 556, 573 (2d Cir. 2010) (internal quotation marks omitted).

4. CCE Sentence

The district court imposed a mandatory minimum sentence of life imprisonment on the CCE count. A mandatory life sentence applies to a CCE conviction only when, among other requirements, the defendant "is the principal administrator, organizer, or

leader of the enterprise or is one of several such principal administrators, organizers, or leaders" of the CCE.  21 U.S.C. § 848(b)(1).  Rosemond notes that the question of whether he was a "principal administrator, organizer, or leader" was not submitted to the jury, and correctly argues that imposing a heightened mandatory minimum sentence based on facts not found by the jury runs afoul of Alleyne v. United States, 133 S. Ct. 2151 (2013), which was decided after his trial.

Rosemond did not dispute below that a mandatory minimum sentence of life imprisonment was applicable to his CCE conviction.  We review errors "not brought to the court's attention" for plain error, Fed. R. Crim. P. 52(b), including in cases where a change in applicable law occurred after conviction, see Johnson v. United States, 520 U.S. 461, 465-66 (1997).  That principle applies when factors affecting a defendant's sentence should have been submitted for a jury finding but were not.  United States v. Joyner, 313 F.3d 40, 45-46 (2d Cir. 2002).  "Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Thomas, 274 F.3d 655, 667 (2d Cir. 2001) (quoting Johnson, 520 U.S. at 466-67) (alterations and internal citations omitted).

The first three of these prongs are generally satisfied where a defendant's sentence enhancement is based on a fact that should have been found by the jury. Joyner, 313 F.3d at 45-46. We may assume they are satisfied here, since we conclude that the fourth prong is not. "We will not reverse for plain error where there is no disagreement as to the truth of the pertinent facts, and the record as a whole casts no doubt on the accuracy of that fact." Joyner, 313 F.3d at 46 (alterations omitted). Here, the government's entire theory of the case was that Rosemond was a principal leader of the CCE, and Rosemond makes no real argument that the jury – which convicted on all thirteen counts – might have concluded otherwise.

Moreover, the district court made abundantly clear that although it believed the life sentence was mandated, it would have imposed a life sentence in any event if it had discretion to impose a lesser sentence. We have held that an error in calculating a mandatory minimum does not require reversal where the error did not make a difference to the sentence imposed. United States v. Deandrade, 600 F.3d 115, 120 (2d Cir. 2010). Cf. United States v. Sanchez, ___ F.3d ___, 2014 WL 6805197, at *3 (2d Cir. Dec. 4, 2014) (holding that error in calculating mandatory minimum requires reversal, even on plain error standard, where the miscalculation had an impact on the sentence imposed). Here, as in Deandrade, the district court specifically stated that the mandatory minimum made no difference to the sentence it imposed. Indeed, the court could hardly have been clearer: the district judge emphasized that the mandatory sentence he believed applied merely required him "to impose a sentence that I would have imposed in any event" and

8

that "if there's ever a time when it's clear that were there judging to be done, the result would be the same, this is it." Joint App'x at 147. The district court followed through on that assessment by imposing life sentences for Counts Two through Seven, none of which carried a mandatory life sentence.

Because there is no genuine dispute as to the pertinent facts and because the error did not affect Rosemond's sentence, the error did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." Thomas, 274 F.3d at 667 (alteration and internal quotation marks omitted). We therefore affirm Rosemond's CCE sentence.

5.    Double Jeopardy

The government concedes that Rosemond's conviction on Count Two, for conspiring to distribute cocaine, should be vacated as a lesser included offense of his CCE conviction pursuant to Rutledge v. United States, 517 U.S. 292 (1996). We agree, and accordingly vacate Rosemond's conviction on Count Two and remand with instructions to the district court to correct the judgment to reflect the dismissal of Count Two.

6.    Proffer Statements

Rosemond argues that his Fifth Amendment right against self-incrimination was violated by the government's use of his proffer statements at trial. The argument is meritless. Rosemond's proffer agreement provided that the government could use his statements "as substantive evidence to rebut, directly or indirectly, any evidence offered

9

or elicited, or factual assertions made, by or on behalf of [Rosemond] at any stage of a criminal prosecution," Gov't App'x at 190, and there is no dispute that Rosemond triggered this provision by referencing the proffer sessions at trial. "[W]here a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense . . . is enforceable." United States v. Velez, 354 F.3d 190, 196 (2d Cir. 2004); see also United States v. Mezzanatto, 513 U.S. 196, 210 (1995). The same applies to a defendant's Fifth Amendment privilege against self-incrimination. "A defendant entering a proffer session is waiving valuable rights – first and foremost, his or her Fifth Amendment right not to incriminate oneself . . . ." United States v. Heatley, 39 F. Supp. 2d 287, 299 (S.D.N.Y. 1998) (Sotomayor, *J.*)

We have considered all of Rosemond's remaining arguments and find them to be without merit. For the foregoing reasons the judgment of the district court is AFFIRMED IN PART and VACATED IN PART, and the case is REMANDED for further proceedings.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court