*United States v. Lemke*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-three.

PRESENT:
>      DENNIS JACOBS,
>      RICHARD J. SULLIVAN,
>      MYRNA PÉREZ,
>         *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                                        No. 22-156

ROBERT LEMKE, AKA SEALED DEFENDANT 1,

> *Defendant-Appellant*.

_____

For Appellant:                         Brendan White, White & White, New York, NY.

For Appellee:                       Kimberly J. Ravener, Kyle A. Wirshba, Dina McLeod, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Robert Lemke appeals from his conviction and sentence following his guilty plea, pursuant to an agreement with the government, to one count of transmitting an interstate communication threatening to injure another person, in violation of 18 U.S.C. § 875(c). The conviction stems from a series of text and audio messages that Lemke sent to over fifty individuals – including journalists, members of Congress, and other public figures – threatening to commit acts of armed violence against those individuals and their family members unless they complied with Lemke's demands to publicly dispute the results of the 2020 presidential election,

which he believed to be illegitimate. The district court sentenced Lemke to an above-Guidelines term of thirty-six months' imprisonment, to be followed by three years' supervised release, and imposed a $100 mandatory special assessment. On appeal, Lemke argues that the district court erred in failing to inquire sua sponte into a putative conflict of interest on the part of his counsel at sentencing; he also challenges the procedural and substantive reasonableness of his sentence. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Where, as here, a defendant "asserts for the first time on appeal that the district court should have investigated whether one of his attorneys had a conflict of interest," we "review this unpreserved objection for plain error." *United States v. Reichberg*, 5 F.4th 233, 245–46 (2d Cir. 2021). On plain-error review, we are "allow[ed] . . . to 'correct an error not raised [in the district court] only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings.'" *United States v. Cohan*,

3

798 F.3d 84, 88 (2d Cir. 2015) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

While we generally review both the procedural and substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard," *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)), we apply the plain-error standard to procedural-reasonableness challenges not raised in the district court, *see United States v. Villafuerte*, 502 F.3d 204, 208–09 (2d Cir. 2007). A district court may commit procedural error by, among other things, "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. "As to substance, we will not substitute our own judgment for the district court's" and "will instead set aside a district court's substantive determination [of the appropriate sentence] only in exceptional cases where [its] decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (emphasis and internal quotation marks omitted).

Lemke first argues that there was an "obvious . . . potential conflict of interest between [Lemke] and his attorney at the sentencing stage," that the district court erred in failing to inquire sua sponte into this putative conflict of interest, and that as a result, his sentence "must be vacated."  Lemke Br. at 9 (capitalization standardized).  We disagree.

"The right to counsel under the Sixth Amendment entails 'a correlative right to representation that is free from conflicts of interest.'"  *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).  To establish a violation of that right, "a defendant" must "show[] that his counsel *actively represented* conflicting interests."  *Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (emphasis in original; citation omitted).  For example, a conflict cognizable under the Sixth Amendment "may be rooted in the attorney's prior representation of a person whose interests are antagonistic to those of his present client" or "grounded in the fact that two lawyers from the same firm [simultaneously] represent two codefendants."  *United States v. Blount*, 291 F.3d 201, 211 (2d Cir. 2002).

When a district court "knows or reasonably should know that a particular conflict exists," *id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)), it must sua

sponte "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual . . . [or] potential conflict," *id.* (citation omitted), and, if so, proceed "to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation," *United States v. Velez*, 354 F.3d 190, 198 (2d Cir. 2004). That obligation, however, is triggered only where "the possibility of a conflict of interest [i]s '*sufficiently apparent*'"– as opposed to where there is merely a "vague, unspecified possibility of conflict" or where, "as a result of creative speculation, one could imagine [that] a conflict may have arisen." *Id.* (first quoting *Wood*, 450 U.S. at 272; then quoting *Mickens*, 535 U.S. at 168–69) (emphasis added). And on plain-error review, a defendant must show not only that the potential conflict was "sufficiently apparent," *id.* (citation omitted), but that it was "clear or obvious," *Reichberg*, 5 F.4th at 246 (quoting *Marcus*, 560 U.S. at 262) (other citation omitted).

Here, Lemke fails to establish that his counsel at sentencing, Assistant Federal Defender Julia Gatto, suffered from *any* possible conflict of interest that would be cognizable under the Sixth Amendment. As a result, he has not identified a conflict that was "sufficiently apparent" to require the district court to undertake a sua sponte inquiry, *Velez*, 354 F.3d at 198 (citation omitted), much less

6

one that was so "clear or obvious" as to justify a finding of plain error, *Reichberg*, 5 F.4th at 246 (citation omitted).

As evidence of a putative conflict of interest, Lemke primarily focuses on the tension between Gatto's sentencing submission, which "sought to connect Mr. Lemke's conduct to psychological issues discussed in a [medical expert] report . . . stat[ing] that [he] suffered from mental illness[es] including grandiosity," Lemke Br. at 12–13 (citing App'x at 47), and Lemke's subsequent letter to the district court, "in which [he] 'took exception to [Gatto's] ascription[s]' regarding his psychological condition," characterizing them as "falsehoods," *id.* at 24 (first quoting App'x at 192–93; then quoting *id.* at 137). But the apparent tensions in this case do not "show[] that [Lemke's] counsel actively represented . . . interests" adverse to her client's, *Mickens*, 535 U.S. at 175 (2002) (emphasis and citation omitted); they merely show that Gatto made a strategic decision to cite Lemke's mental health as a mitigating factor at sentencing, and that Lemke later came to disagree with that strategy. As we have repeatedly held, such disagreements over legal strategy are not cognizable as conflicts of interest under the Sixth Amendment. *See United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006) ("As the only basis asserted by [defendant] for his claim that his attorneys had a conflict of

7

interest is that he and they disagreed as to tactics, he has not shown an actual conflict of interest."); *see also, e.g.*, *United States v. Doe No. 1*, 272 F.3d 116, 126 (2d Cir. 2001); *United States v. Rahman*, 189 F.3d 88, 144 (2d Cir. 1999); *United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999). Nor do such disagreements deprive defendants of their autonomy in violation of the Sixth Amendment. While the constitutional guarantee of effective assistance requires counsel "to consult with the defendant on" certain "important decisions," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), over which a defendant has "ultimate authority," *Florida v. Nixon*, 543 U.S. 175, 187 (2004)– such as "whether to plead guilty, waive the right to a jury trial, [or] testify [on] one's own behalf," *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) – Lemke cites no authority to suggest that the tactical decision as to what arguments to advance in a sentencing memorandum is among them.

Lemke also attempts to manufacture a conflict of interest out of Gatto's response to his letter. Namely, he contends that when Gatto "submitted her own letter . . . contend[ing] that" Lemke's objections to his medical expert's diagnoses of mental illness "were in fact manifestations of" the very "psychological imbalance" referred to in the expert report, she placed herself in "an untenable position" in which she "would . . . be motivated to undermine [Lemke's]

8

credibility . . . in order to protect [her] own reputation." Lemke Br. at 24 (citing App'x at 143). In effect, Lemke argues that his "mere making of . . . an accusation" that Gatto's sentencing submission had misrepresented his mental illness "ipso facto resulted in a conflict of interest because [Gatto could] []not defend h[er]self without contradicting [Lemke]." *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000). We have roundly rejected that argument in the past, and we do so again here. *See id.* at 71–72 (holding that "common complaints [that] defendants make in efforts to be rid of an appointed attorney" – "unlike a claim" of formal "attorney[] misconduct," such as a defendant's "accus[ing] his attorney . . . of having coerced his plea" – "do not give rise to a conflict of interest, even though the attorney may contradict the defendant's allegation in responding to the accusation"); *see also White*, 174 F.3d at 295 (finding no conflict of interest where defendant "argue[d] that, as a result of" his complaints about his attorney, the attorney "contradicted him in open court" (alteration omitted)).

In sum, we find nothing in the record to suggest the existence of a conflict of interest between Lemke and Gatto. It cannot have been error – much less plain error – for the district court to have declined to inquire sua sponte into potential conflicts of interest where none existed.

Lemke next challenges his sentence as both procedurally and substantively unreasonable. His procedural-reasonableness challenge is wholly premised on his contention that "the district court's failure to make an appropriate inquiry regarding the potential attorney-client conflict" was "an error of law." Lemke Br. at 29. Because we have already rejected that underlying contention on its merits, we likewise must reject Lemke's procedural-reasonableness challenge.[1] With respect to the substantive reasonableness of his sentence, Lemke offers several distinct arguments in support of his challenge, but none is availing.

First, Lemke argues that the thirty-six month term of imprisonment imposed by the district court "was substantively unreasonable" because it "was more than 70[%] higher than the top end of the [G]uideline[s] range[] and well over double the [fifteen]-month sentence recommended by [the] [P]robation [Office]." *Id.* This argument assumes that we must treat the Sentencing Commission's Guidelines and the Probation Office's recommendations as tight

---

[1] Lemke concedes, as he must, that a district court's failure to investigate a defense attorney's potential conflict of interest "is not typically among those enumerated as potential procedural errors." Lemke Br. at 29; *cf. Gall*, 552 U.S. at 51. Nevertheless, he urges that here, "the circumstances call for" us to expand the "typical" scope of procedural-reasonableness review. Lemke Br. at 29. Since Lemke's Sixth Amendment conflict-of-interest claim here fails on the merits, we decline to reach the novel question of whether even a meritorious claim of that kind would implicate the procedural reasonableness of a sentence.

constraints on the district court's sentencing discretion. But our caselaw makes clear that it would be affirmatively inappropriate for us to proceed under such an assumption. We "may not apply a presumption of unreasonableness" simply because "a sentence is outside the Guidelines range," *United States v. Pope*, 554 F.3d 240, 246 (2d Cir. 2009) (quoting *Gall*, 552 U.S. at 51), "[n]or [may] we . . . require 'extraordinary' circumstances to justify a deviation from the Guidelines range," *Cavera*, 550 F.3d at 190 (quoting *Gall*, 552 U.S. at 47). Likewise, we have repeatedly emphasized that the Probation Office's presentence report in a given case "is merely a recommendation that does not bind a district court." *United States v. Avello-Alvarez*, 430 F.3d 543, 545 (2d Cir. 2005); *see also United States v. Rivera*, 96 F.3d 41, 43 (2d Cir. 1996) (explaining that "the defendant has no justifiable expectation that the [Probation Office's] recommendation will be followed"); *United States v. Welbeck*, 145 F.3d 493, 498–99 (2d Cir. 1998) (rejecting defendant's claim that the district court erred by failing to follow the Probation Office's recommendation); *United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008) (finding sentence substantively reasonable when it was sixty-four months longer than the Probation Office's recommendation).

Second, Lemke argues that the district court lacked valid "reason[s] . . . for why it was pronouncing an upward variance, . . . why such a substantial variance was being imposed, or why the [G]uidelines sentence was inadequate to meet the requirements of 18 U.S.C. § 3553(a)."  Lemke Br. at 30.[2]  But the record clearly contradicts this assertion.  Indeed, the district court gave *extensive* "reasons" for its determination that the "factors provided in 18 U.S.C. [§] 3553(a)" made it "necessary" to "var[y] and depart[] upwards from the [G]uidelines recommendations."  App'x at 190–91, 194.

As for "the need for the sentence imposed to reflect the seriousness of the offense," the district court detailed how Lemke's "[t]hreats to intimidate" had chilled the "[r]obust political debate [that] is a hallmark of our democracy" and struck at his victims' rights to engage in "[f]ree debate without fear of harm to [themselves] and to their families."  *Id.* at 192–94.  As for "the need for the sentence imposed to . . . afford adequate deterrence to [similar] criminal conduct,"

---

[2] More specifically, Lemke asserts that "the district court did not expressly state" such "reason[s] on the record."  Lemke Br. at 30.  Generally, such an assertion would sound in procedural, rather than substantive, reasonableness.  *See Gall*, 552 U.S. at 51 (characterizing "fail[ure] to adequately explain the chosen sentence" and "any deviation from the Guidelines range" as a "procedural error").  But here, Lemke's assertion to that effect is factually inaccurate, and therefore unavailing, in any event.

12

the district court emphasized that "a line must clearly be drawn between protected speech and criminal threats." *Id.* at 193–94. As for "the history . . . of the defendant and the need for the sentence imposed . . . to protect the public from further crimes of the defendant," the district court explained that "Lemke ha[d] committed previous crimes of seeking to intimidate others," and that the above-Guidelines "sentence [was] intended . . . to incapacitate him from committing such crimes in the future." *Id.* As for the "need . . . to provide just punishment for the offense," the district court homed in on the callous inhumanity of Lemke's willingness to threaten not only the "senators, congressmen, and journalists" whose political speech he actually intended to stifle, but also their "spouses, children, and grandparents." *Id.* at 191, 194.

Given this careful and compelling analysis of the section 3553(a) factors, we have no doubt that "the district court's decision that [such] factors, on [the] whole, justif[ied] the extent of the variance," *Gall*, 552 U.S. at 51, "resulted from the reasoned exercise of discretion," *Cavera*, 550 F.3d at 193. And "once we are sure that the sentence resulted from the reasoned exercise of discretion, we must defer heavily to the expertise of [the] district judge[]." *Id.*; *see also United States v. Jones*, 531 F.3d 163, 170–71 (2d Cir. 2008) (discussing "district courts['] . . . distinct

13

institutional advantages over appellate courts in determining what sentence best achieves the purposes of [section] 3553(a) in a given case").  At bottom, Lemke "has presented us with no compelling reason to second[-]guess the determination of the [d]istrict [c]ourt that these factors warrant a variance from the Guidelines of the magnitude imposed here."  *Pope*, 554 F.3d at 247.  Accordingly, we cannot say that the district court's imposition of a thirty-six-month term of imprisonment was substantively unreasonable or otherwise outside of "the range of permissible decisions."  *Cavera*, 550 F.3d at 189.

We have considered Lemke's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14